IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mrs. Michelle Tisdale<br><br>Plaintiff<br><br>v.<br><br>SC Department of Employment and Workforce.<br><br>Defendant. | C/A No.:<br><br><br>COMPLAINT |

## INTRODUCTION

Plaintiff, Mrs. Michelle Tisdale, by and through his undersigned counsel, hereby brings the Causes of Action of Breach of Contract, Age Discrimination, and Failure to accommodate under Americans with Disabilities Act (ADA) against Defendant, SC Department of Employment and Workforce, based on the following allegations.

## ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

a.  Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2022.

b.  Plaintiff received a Notice of Right to Sue from the EEOC on March 16, 2026.

1

Plaintiff has timely filed this action within (90) days from the date on which he received her Notice of Right to Sue.

<u>PARTIES</u>

1.  Plaintiff Michelle Tisdale is a citizen of the United States. Plaintiff resides in Richland County, South Carolina within this Judicial District.

2.  Upon information and belief, Defendant SC Department of Employment and Workforce, located in Richland County, South Carolina, is an organization conducting business and operations in the State of South Carolina, having agents, employees, offices, or properties in Richland County, South Carolina within this Judicial District. At all times relevant to this complaint, Defendant acted by and through its agents, servants, employees and/or officers. Defendant is legally organized and exists under the Code of Laws of the State of South Carolina.

<u>JURISDICTION AND VENUE</u>

3.  This Court has proper jurisdiction of both the parties and subject matter in this action, as this action arises, inter alia, under the Common Laws of South Carolina, and all parties are situated within the state.

4.  The venue is proper in Richland County because the causes of action arose therein, the acts and practices complained of occurred there, and it is where the defendants are situated, do business, and may be found.

5.  Further, the venue is proper in this court under S.C. Code Ann. § 15-7-30 (Supp. 2018).

<u>STATEMENT OF FACTS</u>

6. Plaintiff is a fifty-seven (57) year old African American woman who dedicated more than twenty-four (24) years of service to the South Carolina Department of Employment and Workforce ("DEW"). During her tenure, Plaintiff worked in DEW's Business Intelligence Department and served approximately twelve (12) years as a Lead Analyst.

7. Throughout her employment, Plaintiff consistently performed her job duties in a satisfactory and professional manner. Plaintiff possessed extensive institutional knowledge, was one of the most senior employees within her department, and was frequently relied upon by management and coworkers regarding departmental operations and data-related issues.

8. Plaintiff's performance met or exceeded Defendant's legitimate expectations throughout her employment. At no time prior to the events giving rise to this lawsuit was Plaintiff disciplined for performance-related deficiencies that would justify termination.

9. On or about March 8, 2021, Plaintiff suffered a serious heart attack while preparing for work. The heart attack constituted a life-threatening medical emergency requiring immediate hospitalization and extensive medical treatment.

10. Plaintiff remained hospitalized for more than one week and subsequently participated in cardiac rehabilitation as directed by her treating physicians.

11. Following the heart attack, Plaintiff suffered numerous additional medical complications and illnesses, including pneumonia, influenza, COVID-19 on two separate occasions, diabetic episodes, injuries resulting from a fall, and additional heart-related medical procedures.

12. As a result of these serious medical conditions, Plaintiff experienced continuing impairments, including but not limited to shortness of breath, fatigue, compromised immune function, vision problems, gastrointestinal complications, diabetes-related limitations, breathing difficulties, and symptoms consistent with long-COVID.

13. Despite these serious health challenges, Plaintiff remained committed to returning to work and maintaining her employment with DEW.

14. Throughout her medical leave, Plaintiff maintained communication with Defendant's Human Resources Department and kept Defendant informed regarding her medical status, treatment, recovery, and anticipated return-to-work timeline.

15. Prior to Plaintiff's heart attack, DEW implemented remote work arrangements in response to the COVID-19 pandemic.

16. From approximately March 2020 through April 2021, Plaintiff successfully performed her job duties remotely without issue.

17. Plaintiff's position as a Lead Analyst was fully capable of being performed remotely. Plaintiff had access to the necessary technology, databases, software, and equipment required to perform her job duties from home.

18. While working remotely, Plaintiff continued to perform her responsibilities effectively and efficiently.

19. Even while on medical leave, Plaintiff was frequently contacted regarding work-related matters because of her extensive knowledge and experience within the department.

20. To Plaintiff's knowledge, no significant changes occurred to the technology, databases, software systems, or operational requirements of her position that would have prevented the continued performance of her duties remotely.

21. Plaintiff's department reported to a federal office in Atlanta, Georgia, and Plaintiff understood that employees associated with that office continued working remotely after the onset of the COVID-19 pandemic.

22. In February 2022, after nearly a year of medical treatment and recovery, Plaintiff proactively contacted the South Carolina Retirement System to inquire about her retirement eligibility.

23. Plaintiff reasonably believed she had accumulated approximately twenty-five (25) years of service and would be eligible to retire.

24. During her conversation with the Retirement System, Plaintiff learned that she had accumulated approximately twenty-four (24) years and two (2) months of qualifying service credit and was approximately ten (10) months short of retirement eligibility.

25. Plaintiff was informed that she was old enough to retire but lacked sufficient years of service to qualify for retirement benefits.

26. Plaintiff was further informed that she could potentially return to work if appropriate medical documentation and accommodations were provided.

27. Shortly after Plaintiff contacted the Retirement System, Defendant began requesting medical documentation regarding Plaintiff's ability to return to work and any accommodations that would be necessary for her return.

28. Prior to Plaintiff's inquiry regarding retirement, Defendant had not actively engaged Plaintiff regarding a return-to-work plan despite her lengthy employment history and ongoing communications regarding her medical condition.

29. Plaintiff fully cooperated with Defendant's requests and provided medical documentation from her treating physicians.

30. Plaintiff's physicians determined that she could return to work if certain accommodations were provided.

31. Specifically, Plaintiff's physicians recommended that she return to work on a part-time basis while working remotely from home due to the continuing effects of her heart condition, respiratory issues, diabetes, compromised immune system, and other medical complications.

32. The requested accommodations were reasonable and would have allowed Plaintiff to perform the essential functions of her position.

33. Defendant nevertheless rejected Plaintiff's requested accommodations.

34. Defendant informed Plaintiff that she would be required to work full-time and report to the office in person.

35. Defendant further represented that there was no telecommuting policy and that remote work was not available as an accommodation.

36. Defendant's position was inconsistent with its prior practice of permitting employees, including Plaintiff, to perform their work remotely during the COVID-19 pandemic.

37. Defendant knew that Plaintiff had successfully performed her job duties remotely before her medical leave and knew that remote work would allow Plaintiff to continue working while managing her medical limitations.

38. Defendant refused to engage in a meaningful interactive process regarding Plaintiff's accommodation requests and rejected the accommodations recommended by Plaintiff's treating physicians.

39. Plaintiff believed Defendant's refusal to accommodate her was motivated, at least in part, by her age, disability, lengthy tenure with the agency, and proximity to retirement eligibility.

40. Had Defendant granted the requested accommodations, Plaintiff would have been able to return to work, continue earning service credit, and become eligible for retirement benefits within approximately ten months.

41. On or about March 21, 2022, Defendant informed Plaintiff that it had received her medical documentation but would not accommodate her restrictions.

42. During that communication, Defendant advised Plaintiff that her services were no longer needed.

43. Defendant thereafter issued a termination letter dated March 25, 2022, which Plaintiff received on or about March 26, 2022.

44. Plaintiff was required to sign for the certified letter and reasonably believed the letter constituted official notice of her termination.

45. The letter contained information regarding Defendant's grievance procedures.

46. Relying upon the information provided, Plaintiff timely attempted to initiate the grievance process after receiving the termination letter.

47. Defendant subsequently informed Plaintiff that she could not pursue the grievance procedure because Defendant considered the filing deadline to have begun before Plaintiff received the termination letter.

48. Defendant asserted that Plaintiff's termination became effective on March 21, 2022, despite Plaintiff not receiving the written termination notice until days later.

49. Defendant's actions effectively deprived Plaintiff of a meaningful opportunity to challenge her termination through the grievance process.

50. As a direct and proximate result of Defendant's actions, Plaintiff lost her employment, wages, retirement opportunities, health insurance, life insurance benefits, and other employment-related benefits.

51. Plaintiff has suffered significant emotional distress, mental anguish, humiliation, embarrassment, anxiety, and financial hardship.

52. Defendant's refusal to accommodate Plaintiff's disability, denial of equal employment opportunities, termination of her employment, and denial of meaningful access to the grievance process were motivated by unlawful discrimination on the basis of Plaintiff's disability and age.

53. Defendant's conduct was intentional, willful, reckless, and in conscious disregard of Plaintiff's protected rights.

<u>FIRST CAUSE OF ACTION</u>

*Breach Of Contract*

54. Plaintiff reiterates every allegation contained in the preceding paragraphs as if set forth verbatim herein.

55. At all relevant times, Defendant maintained policies, procedures, employee handbooks, grievance procedures, personnel manuals, employment policies, and other employment-related documents governing the terms and conditions of Plaintiff's employment.

56. Defendant's policies and procedures created enforceable contractual obligations between Defendant and Plaintiff, including but not limited to obligations regarding employee discipline, termination, accommodations, notice requirements, and access to grievance procedures.

57. Plaintiff fully performed her obligations under the employment contract and substantially complied with all applicable employment policies and procedures throughout her more than twenty-four years of employment.

58. Following Defendant's decision to terminate Plaintiff's employment, Defendant issued a termination letter advising Plaintiff of her grievance rights and the procedures necessary to challenge her termination.

59. Plaintiff reasonably relied upon the information contained in Defendant's termination letter and timely submitted her grievance paperwork after receiving the certified termination notice.

60. Despite Plaintiff's compliance with the grievance procedures set forth in the termination letter, Defendant refused to process Plaintiff's grievance and denied her access to the grievance procedure.

61. Defendant improperly calculated the grievance deadline from an alleged termination date that preceded Plaintiff's receipt of the termination letter and grievance information.

62. Defendant's actions deprived Plaintiff of the contractual benefits and protections afforded to other employees under Defendant's grievance policies and procedures.

63. Defendant further failed to follow its own policies and procedures concerning Plaintiff's termination, accommodation requests, and post-termination rights.

64. Defendant's refusal to permit Plaintiff to utilize the grievance process constituted a material breach of its contractual obligations.

## SECOND CAUSE OF ACTION

*Age Discrimination*

65. Plaintiff reiterates every allegation contained in the preceding paragraphs as if set forth verbatim herein.

66. At all relevant times, Plaintiff was fifty-seven (57) years old and a member of a protected age class.

67. Plaintiff had devoted more than twenty-four years of service to Defendant and was approximately ten months short of qualifying for full retirement benefits.

9

68. Defendant was fully aware of Plaintiff's age, length of service, and proximity to retirement eligibility.

69. Plaintiff was qualified for her position and had successfully performed her duties for decades.

70. Defendant refused to permit Plaintiff to return to work under reasonable conditions that would have enabled her to continue working and obtain retirement eligibility. On information and belief Plaintiff after working for twenty (20) or more years has witnessed and been informed by her colleagues of Defendant's allowance of younger less than forty (40) years of age employees within her locale and state wide to work remotely after requesting reasonable accommodations or Defendant initiating work from home accommodations for less serious medical reason.

71. Defendant knew that denying Plaintiff's requested accommodations would prevent her from completing the remaining months necessary to qualify for retirement benefits.

72. Defendant's refusal to accommodate Plaintiff, while accommodating younger employees with medical request for accommodations is blatant age discrimination and coupled with its decision to terminate her employment while she was only months away from retirement eligibility, shows Defendants intent to terminate Plaintiff based on her ag.

73. Plaintiff was one of the most senior employees within her department and possessed substantial institutional knowledge acquired through decades of service.

74. Rather than work with Plaintiff to facilitate her return to employment, Defendant chose to terminate her despite the availability of accommodations that would have allowed her to continue performing her job.

75. Defendant's stated reasons for denying Plaintiff's accommodation requests were false, inconsistent, and pretextual.

76. Defendant's actions deprived Plaintiff of the opportunity to complete the final months of service necessary to secure retirement benefits earned through more than two decades of dedicated employment.

77. Defendant intentionally treated Plaintiff less favorably because of her age and proximity to retirement.

## THIRD CAUSE OF ACTION

*Failure to Accommodate under Americans with Disabilities Act (ADA)*

78. Plaintiff reiterates every allegation contained in the preceding paragraphs as if set forth verbatim herein.

79. Plaintiff suffered from serious medical impairments, including a heart attack, cardiac complications, respiratory impairments, diabetes-related complications, a compromised immune system, vision impairments, and other chronic conditions that substantially limited major life activities, including breathing, walking, working, caring for herself, and performing other daily activities.

80. Defendant had actual knowledge of Plaintiff's disabilities and medical limitations through Plaintiff's continuous communications with Human Resources, medical certifications, physician reports, leave records, and accommodation requests.

81. Plaintiff remained qualified to perform the essential functions of her position as Lead Analyst.

82. Plaintiff successfully performed the duties of her position for more than twenty-four years and served as a Lead Analyst for approximately twelve years.

83. Prior to Plaintiff's medical leave, Defendant permitted Plaintiff to perform her job remotely during the COVID-19 pandemic.

84. Plaintiff successfully performed her job duties remotely without issue.

85. Defendant possessed the technological infrastructure, databases, equipment, and resources necessary for Plaintiff to continue performing her duties remotely.

86. Plaintiff's treating physicians determined that Plaintiff could return to work if reasonable accommodations were provided.

87. Specifically, Plaintiff's physicians recommended that Plaintiff be permitted to work remotely on a part-time basis while continuing her recovery from her serious medical conditions.

88. Plaintiff communicated these accommodation requests to Defendant and provided supporting medical documentation.

89. The requested accommodations would have allowed Plaintiff to perform the essential functions of her position.

90. Defendant never identified any essential job duty that Plaintiff could not perform remotely.

91. Defendant never identified any undue hardship that would have resulted from permitting Plaintiff to work remotely.

92. Defendant never identified any material change in Plaintiff's job duties that would have prevented remote work.

93. Defendant failed to engage in a good-faith interactive process regarding Plaintiff's accommodation request.

94. Rather than discuss alternative accommodations or explore options that would allow Plaintiff to continue working, Defendant summarily rejected Plaintiff's physician-recommended accommodations.

95. Defendant informed Plaintiff that there was no telecommuting policy despite the fact that Plaintiff and other employees had previously performed their duties remotely.

96. Defendant's explanation for denying Plaintiff's accommodation request was inconsistent with its own prior practices and operational capabilities.

97. Defendant refused to accommodate Plaintiff's disabilities even though Plaintiff sought only the opportunity to continue working and complete the final months necessary to reach retirement eligibility.

98. Defendant subsequently terminated Plaintiff's employment because of her disabilities, perceived disabilities, and need for accommodation.

99. The temporal proximity between Plaintiff's request for accommodation and Defendant's decision to terminate her employment supports an inference of discriminatory intent.

100.    Defendant's stated reasons for refusing accommodation were false, inconsistent, and pretextual.

101.    Defendant treated Plaintiff's medical limitations as a reason to separate her from employment rather than reasonably accommodate her.

102.    As a direct and proximate result of Defendant's conduct, Plaintiff lost her employment, wages, retirement opportunities, health insurance, life insurance benefits, and other employment-related benefits.

103.    Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, anxiety, inconvenience, and mental anguish.

<u>PRAYER FOR RELIEF</u>

104.    Plaintiff reiterates every allegation contained in the preceding paragraphs as if set forth verbatim herein.

105.    Plaintiff respectfully requests a jury trial.

106.    WHEREFORE, Plaintiff prays that this Honorable Court declares that Defendants' actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

a.    Declaring the actions complained of herein illegal;

b.    Issuing an injunction enjoining the Defendants, their agents, employees, successors, attorneys, and those acting in concert or participation with the Defendants, and at their direction from engaging in the unlawful practices set forth herein or any other practices shown to violate South Carolina Law.

c.    Awarding Plaintiff actual and compensatory damages against Defendants for the Causes of Action as contained herein, which the jury should find appropriate as a result of the Defendants' unlawful actions, including mental anguish, physical and emotional pain and suffering, harm to Plaintiff's' economic opportunities, medical costs and expenses. As well as back pay, front pay, travel hardships, expenses, and lost future earnings with cost-of-living adjustments, prejudgment interest, fringe benefits, and retirement benefits.

d.    Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

e.    Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

__s/Donald Gist_____

Donald Gist (13098)
GIST LAW FIRM, P.A.
4400 North Main Street (29203)
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

14

June 12, 2026

15